UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

JUL 12 2021

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 3:21-00157 |
| v. | ) | |
| | ) | 18 U.S.C. § 2 |
| | ) | 18 U.S.C. § 1028A |
| | ) | 18 U.S.C. § 1341 |
| CHAD WILLIAM RUDICEL | ) | 18 U.S.C. § 1343 |

# INDICTMENT

THE GRAND JURY CHARGES:

At all times material to this Indictment:

1. **CHAD WILLIAM RUDICEL ("RUDICEL")** was the owner of Ellis & Rudicel Welding ("E&R"), located in Springfield, Tennessee. At the time he purchased it in 2014, E&R was an existing steel fabrication and welding company.

2. C.B. was an individual known to the Grand Jury who owned a steel welding and fabrication business, known as Brown Cliff Crane / Brown's Welding and Steel Service ("Brown's Welding"). Brown's Welding provided cranes for construction projects in Middle Tennessee and provided welding services and the erection construction of steel buildings and other steel products.

3. D.V. was an individual known to the Grand Jury who was an employee of Robertson County.

## COUNTS ONE THROUGH SEVEN

4. Beginning on or about a date unknown to the Grand Jury but no later than January 2016, and continuing until in or about September 2017, in the Middle District of Tennessee and elsewhere, **CHAD WILLIAM RUDICEL** devised and intended to devise a scheme and artifice to defraud credit and loan-issuing institutions, factoring companies, financial institutions, C.B.,

K.P., and others, and to obtain money and property by means of materially false pretenses, representations, and promises, and by acts of concealment of the scheme, and in furtherance thereof, used interstate wires, which scheme is further described in the following paragraphs.

5. In or about summer 2015, **RUDICEL** approached C.B. and offered to purchase Brown's Welding. C.B. gave **RUDICEL** access to the books and records of Brown's Welding so that **RUDICEL** could have the business appraised. **RUDICEL** never ultimately purchased Brown's Welding.

6. In April 2016, **RUDICEL** sought to obtain funding from Thermo Communications Funding, LLC ("Thermo"). Thermo was a company that offered funding solutions to established businesses primarily to aid them in acquisitions and boosting operational cash flow.

7. At times during the scheme, **RUDICEL** held his wife, L.R., out to be the owner of E&R. L.R. often signed documents related to financing on behalf of E&R, but **RUDICEL** was the point of contact for the business. Additionally, **RUDICEL** maintained control of E&R's bank accounts.

8. In July 2016, **RUDICEL** and L.R. (on behalf of E&R) entered into a factoring and security agreement with Thermo (the "Factoring Agreement"). In the Factoring Agreement, E&R agreed to sell accounts receivable purportedly owed to it by Brown's Welding for work that E&R had allegedly been completing. In support of the Factoring Agreement, **RUDICEL** caused to be emailed to Thermo several bogus invoices that falsely claimed E&R had performed work for Brown's Welding in the total amount of $279,700. E&R had not, in fact, done the work for Brown's Welding, and Brown's Welding did not owe E&R any money. In fact, **RUDICEL** fabricated the invoices and forged C.B.'s signature on a number of documents he submitted to

Thermo. Further, **RUDICEL** falsely represented that he had authority to assign the invoices to Brown's Welding and that C.B. had consented to the deal.

9. **RUDICEL** did not timely repay the loan to Thermo. When Thermo asked why he had not repaid the funds yet, **RUDICEL** fabricated a number of false excuses to lull Thermo into believing he planned to repay the funds. In November 2016, Thermo had become increasingly suspicious because **RUDICEL** had not repaid the loan and threatened to take legal action. A few weeks later, **RUDICEL** opened a bank account at Regions Bank, account number ending x2388, in the name of "Brown's Welding and Crane Service."

10. In December 2016, **RUDICEL** sought and secured a loan in the amount of $25,000 from New Hope Properties, LLC, ("New Hope"), which was an investment company owned by an individual known to the Grand Jury, whose initials are K.P. Under the terms of the loan, **RUDICEL** promised to repay the loan within two months at an interest rate of 15%. On or about December 19, 2016, New Hope wired $25,000 to the bank account at Regions that **RUDICEL** controlled in the name of Brown's Welding and Crane Service.

11. On or about January 20, 2017, **RUDICEL** sent Thermo a check in the amount of $25,000 from the bank account at Regions ending x2388. The check was returned due to insufficient funds because **RUDICEL** had already spent the money he received from New Hope.

12. In March 2017, **RUDICEL** sought additional funding from Construction Finance, LLC ("Construction Finance") which was a company that provided construction financing through account receivables and factoring agreements.

13. **RUDICEL** applied for the funds from Construction Finance in the name of C.B., without C.B.'s knowledge or permission. On March 10, 2017, **RUDICEL** submitted to

Construction Finance a Letter Agreement, a Factoring and Security Agreement, and a number of other documents that each bore C.B.'s forged signatures.

14. **RUDICEL** also caused to be emailed to Construction Finance various documents, including financial documents and bank statements that were purportedly from Brown's Welding. **RUDICEL** also caused to be submitted to Construction Finance several false invoices and job contracts that made it appear that Brown's Welding had entered into contracts with various clients, and that Brown's Welding had subcontracted that work to E&R. **RUDICEL** falsely made it appear as though E&R was owed approximately $531,000. Several of these false documents contained the forged signatures of a Brown's Welding employee and representatives of the purported clients. In addition to the forged signatures, these invoices and contracts were false and fraudulent because neither E&R nor Brown's Welding had entered into contracts with these clients, nor completed the work, nor were they owed money by any of these clients.

15. On or about the dates listed below in each count, in the Middle District of Tennessee and elsewhere, **CHAD WILLIAM RUDICEL**, for the purpose of executing and attempting to execute the scheme to defraud, caused to be transmitted by means of wire communications in interstate commerce the following signals and sounds listed in the table below:

| Count | Date | Description of Wire Transaction |
| --- | --- | --- |
| ONE | 07/19/2016 | A wire in the amount of $134,016.75 from Thermo in New Orleans, LA, to a First Tennessee bank account in the name of E&R ending x1944 |
| TWO | 08/18/2016 | A wire in the amount of $54,162 from Thermo in New Orleans, LA, to a First Tennessee bank account in the name of E&R ending x1944 |
| THREE | 08/22/2016 | A wire in the amount of $9,747 from Thermo in New Orleans, LA, to a First Tennessee bank account in the name of E&R ending x1944 |
| FOUR | 09/12/2016 | An email from **RUDICEL** in Nashville, TN, to a representative of Thermo in New Orleans, LA, falsely stating that the reason **RUDICEL** had not repaid |

| | | Thermo was because the bank put a hold on a check because of the size of the check. |
|---|---|---|
| FIVE | 12/19/2016 | A wire in the amount of $25,000 from a bank account in the name of New Hope at Union Bank & Trust in Richmond, VA, to a bank account at Regions ending x2388 in the name of "Browns Welding and Crane Service" |
| SIX | 03/12/2017 | An email from **RUDICEL** in Nashville, TN, to a representative of Thermo in New Orleans, LA, attaching a false and fraudulent financing agreement that bore a forged signature of C.B. |
| SEVEN | 03/14/2017 | Email from individual C.R. to Construction Finance containing false documents, including customer verification letters and job contracts and notices of assignments and forged signatures of C.B., D.V. and P.K., among other falsities |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT EIGHT

16. Paragraphs One (1) through Fifteen (15) are reincorporated and realleged as if fully set forth herein.

17. On or about January 21, 2017, in the Middle District of Tennessee and elsewhere, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and deprive, **CHAD WILLIAM RUDICEL** knowingly deposited and caused to be deposited, sent and caused to be sent and delivered by the U.S. Mail and a private and commercial interstate carrier the following matter: a check in the amount of $25,000, made payable to "Thermo," mailed from Nashville, Tennessee, to Thermo at 639 Loyola Avenue, New Orleans, Louisiana 70113.

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT NINE

THE GRAND JURY FURTHER CHARGES:

18. Paragraphs One (1) through Fifteen (15) and Seventeen (17) are reincorporated and realleged as if fully set forth herein.

19. On or about March 12, 2017, in the Middle District of Tennessee, **CHAD WILLIAM RUDICEL** did knowingly use, without lawful authority, a means of identification of another person, C.B., that is, his name and forged signature, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit wire fraud, in violation of 18 U.S.C. § 1343, knowing that the means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT TEN

THE GRAND JURY FURTHER CHARGES:

20. Paragraphs One (1) through Fifteen (15) and Seventeen (17) are reincorporated and realleged as if fully set forth herein.

21. On or about March 14, 2017, in the Middle District of Tennessee and elsewhere, **CHAD WILLIAM RUDICEL** did knowingly use, without lawful authority, a means of identification of another person, D.V., that is, his name and forged signature, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit wire fraud, in violation of 18 U.S.C. § 1343, knowing that the means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

## FORFEITURE ALLEGATION

22. Paragraphs One (1) through Twenty-One (21) are reincorporated and realleged as if fully set forth herein in support of this forfeiture.

23. Upon conviction of any one of Counts One through Nine of this Indictment, **CHAD WILLIAM RUDICEL** shall forfeit to the United States of America, pursuant to Title 18, United

States Code, Section 982(a)(2), any property constituting, or derived from, proceeds **RUDICEL** obtained directly or indirectly, as the result of a violation of Title 18, United States Code, Section 1343 as charged in Counts One through Seven; Title 18, United States Code, Section 1341 as charged in Count Eight; or a violation of Title 18, United States Code, Section 1028A as charged in Counts Nine and Ten, including but not limited to a money judgment in the amount of at least $222,925.75 United States currency, representing the proceeds of the scheme and artifice to defraud as set forth in the Counts One through Eight.

24. Alternatively, upon conviction of any one of Counts One through Ten of this Indictment, **RUDICEL** shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(D) by Title 28 United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1343 as charged in Counts One through Seven; a violation of Title 18, United States Code, Section 1341 as charged in Count Eight; or a violation of Title 18, United States Code, Section 1028A as charged in Counts Nine and Ten, including but not limited to a money judgment in the amount of at least $222,925.75 United States currency, representing the proceeds of the scheme and artifice to defraud as set forth in the Counts One through Eight.

25. If any of the property described above, as a result of any act or omission of **RUDICEL**:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property, and it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of RUDICEL, up to the value of said property listed above as subject to forfeiture up to the amount of $222,925.75 United States currency.

A TRUE BILL

███████████████
FOREPERSON

MARY JANE STEWART
ACTING UNTIED STATES ATTORNEY

*Kathy Booth*

KATHRYN W. BOOTH
ASSISTANT UNITED STATES ATTORNEY